**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

TOMMY LEE SHERIFF,
                Plaintiff

v.

CITY OF JACKSON, MISSISSIPPI

CHIEF OF POLICE JAMES E. DAVIS,
individually and in his capacity as Chief of
Jackson Police Department

OFFICER MIRON B. SMITH, individually
and in his capacity as a JPD Officer

INVESTIGATOR STEPHANIE HORN,
individually and in her capacity as a JPD
Investigator

OFFICER MYKILA WALKER, individually
and in her capacity as a JPD Officer

DETECTIVE TERRANCE JACKSON,
individually and in his capacity as a JPD
Detective

OFFICER ROBERT TAYLOR, individually
and in his capacity as a JPD Officer

HINDS COUNTY, MISSISSIPPI

SHERIFF LEE D. VANCE, individually and
in his capacity as Sheriff

SHERIFF TYREE JONES, individually and in
his capacity as Sheriff

MISSISSIPPI DEPARTMENT OF PUBLIC
SAFETY

MISSISSIPPI FORENSIC LABORATORY
COMMISSIONER MARSHALL FISHER,
individually and in his capacity as
Commissioner

Civil No. <u>3:22-cv-00392-TSL-RPM</u>

1

COMMISSIONER SEAN TINDELL,
individually and in his capacity as
Commissioner

OFFICERS JOHN DOES 1-3, individually and
in their capacities as JPD Officers

          Defendants

---

## FIRST AMENDED COMPLAINT

---

### *Jury Trial Demanded*

**COMES NOW,** TOMMY LEE SHERIFF, by his attorneys, and files this, his Complaint against the above-named defendants.  In support thereof, Plaintiff submits the following:

### PRELIMINARY STATEMENT

This complaint involves claims that arise from an investigation that began on June 25, 2019, in which Officers of the Jackson Police Department, acting under color of state law, subjected plaintiff to, inter alia, false arrest and false imprisonment.  Plaintiff was incarcerated for approximately twenty (20) months awaiting trial.  Plaintiff was accused of committing a heinous assault, home invasion and attempted rape of an elderly woman.  The crime alleged very likely never occurred because the alleged victim's description of the violent assault did not match the circumstances observable at the scene of the alleged crime.  The alleged victim, Ms. Hunt, did not have any injuries, but stated that she was punched multiple times in the face.  No signs of a struggle were observed in the home despite Ms. Hunt describing a violent assault taking place in the small residence.  Ms. Hunt told JPD Officers that she fought off her assailant by breaking a vase over his head, but no broken vase was observed.  The thing observed that corroborated what the elderly Ms. Hunt was alleging, was the condition of her clothes, which were torn and there was a small amount of what appeared to be dried blood.  However, the torn clothing was very old and it was clear that the clothes had been mended before.

2

No reasonable person could have concluded that the alleged crime had actually taken place. However, assuming arguendo that it did, Plaintiff did not match the description of the assailant given by Ms. Hunt. Ms. Hunt described the assailant as over 6-feet-tall with medium build. Plaintiff is 5'7 and 150lbs. Having knowledge of these facts, JPD Officers presented the elderly Ms. Hunt with a photo array with six individuals. The photo array did not show the height or build of the individuals and Ms. Hunt allegedly identified Plaintiff as her assailant.

This photo array identification was then presented to a municipal court judge in order to obtain an arrest warrant for Plaintiff. The request for an arrest warrant submitted to the judge did not mention Ms. Hunt's age, the clear discrepancies between the observation of the crime scene and Ms. Hunt's statements and it did not mention the large discrepancy between Plaintiff's physical appearance and the description of the assailant given by Ms. Hunt. JPD Officers simply presented the photo array identification and a summary of the heinous crime reported by Ms. Hunt.

Plaintiff would spend approximately twenty (20) months awaiting trial in the custody of Hinds County Mississippi in a jail that is the subject of ongoing litigation initiated by the Department of Justice. The jail is known to be and has been declared by a federal court to be violative of inmates' constitutional rights for a litany reasons. Federal District Court Judge Carleton V. Reeves has issued multiple show cause and contempt orders regarding the administration of the Raymond Detention Center (or "Jail") because the jail has not been remediated pursuant to the court's orders, stating that the jail has "a destructive effect on human character" because it is in a "deplorable condition and inadequately staffed."[1] [2]

---

[1] United States v. Hinds County et al, United States District Court, S.D. Mississippi, Cause No. 3:16-CV-489. November 23, 2021: Order to Show Cause at p. 4. The relevant Court Orders from this case are attached to this complaint collectively as Exhibit "I".

As Plaintiff, remained incarcerated in deplorable conditions at the jail, proclaiming his innocence and demanding a trial for twenty (20) months, the Mississippi Forensics Laboratory was tasked with testing the small amount of dried blood on the alleged victim's clothing.  The results of this forensic testing was potentially exculpatory and Plaintiff eagerly awaited the results that would clear his name.  The crime lab never submitted a lab report and to this day the results of that testing are unknown to Plaintiff.

After 609 days of incarceration, the charges against Plaintiff were dropped because it was discovered that the alleged victim had dementia.  Plaintiff was released on March 8, 2021.

## JURISDICTION AND VENUE

1. This action is brought pursuant 42 U.S.C. §1983, the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.  Therefore, this Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331; 28 U.S.C. §1343(a); 42 U.S.C. §1988; and 42 U.S.C. §1985. This Court has supplementary jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.  The amount in controversy exceeds $75,000.00 excluding interest and costs.

2. Venue is proper in Southern District of Mississippi pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to plaintiff's claims occurred in Hinds County, Mississippi, which is located in the Southern District of Mississippi, Northern Division.

## PARTIES

### *Plaintiffs*

3. TOMMY LEE SHERIFF is a 53-year-old African American male, a United States Citizen, who at all relevant times resided in Hinds County, Mississippi.

### *Defendants*

4. CITY OF JACKSON (or "the City"), is a political subdivision of the State of Mississippi that can be sued in its own name. of the State of Mississippi.  At all relevant times hereto, Defendant City,

acting through the Jackson Police Department (or "JPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all JPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all JPD personnel.  In addition, Defendant City was responsible for enforcing the rules of JPD, and for ensuring that the JPD personnel obey the laws of the United States and the State of Mississippi.  The customs and/or policies of the City caused the violations of constitutional rights suffered by the Plaintiff.

5.  JAMES E. DAVIS, is, or was at the relevant times of this lawsuit, the Chief of Police of JPD and is the final policymaker for the City with respect to all law enforcement and crime control decisions.  Chief Davis is responsible for JPD's investigation policies, including photo array identification policies.  Chief Davis is responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of JPD's officeea and other personnel.  He is sued in his official capacity.

6.  JPD EMPLOYEES:  Officer Miron B. Smith, Investigator S. Horn, Officer Mykila Walker, Police Officer Stephanie Hunt, Detective Terrance Jackson and Police Officer R. Taylor were, at all relevant times, law enforcement officers employed by JPD.  As such, they were acting in the capacity of an agent, servant and employee of the City of Jackson.  All were involved in the false arrest and imprisonment of Plaintiff.  All have a supervisory function and final decision-making authority.  All are sued in their individual and official capacity.  Defendant Officers John Doe 1-3 are police officers whose names are not known to Plaintiff but Plaintiff has information and belief that they were involved in the investigation and/or false arrest that gives rise to this complaint.  Plaintiff also believes that as part of their duties at JPD they have a supervisory function and final decision-making authority.  They are sued in their individual and official capacities and Plaintiff will amend this complaint with their names when he has such information.

7. HINDS COUNTY, MISSISSIPPI: is a political subdivision of the State of Mississippi and can be sued in its own name.  It is located within the Southern District of the United States District Court, Northern Division, Mississippi.  Hinds County, by and through the Office of the Hinds County Sheriff's Department, manages and operates the Hinds County Detention Center (or "HCDC"), Raymond Detention Center (or "RDC"), the Work Center (or "WC"), and the Jackson Detention Center (or "JDC").  All of these facilities are used to house inmates that are in the custody of Hinds County (they are collectively referred to herein as the "Jail").  Hinds County has the responsibility for providing humane care and treatment consistent with all constitutional and ACA standards and is responsible for appointment, training, supervision, discipline, retention and conduct of HCSO personnel and all personnel at the Jail.  Defendant is subject to in personam jurisdiction of this Court by service of process upon its Board of Supervisors, by and through the Hinds County Chancery Court Clerk.

8. SHERIFF'S:  Victor P. Mason, Lee D. Vance and Tyree Jones were, at relevant times, the Sheriff of Hinds County during plaintiff's unlawful detention.  While holding the Office of Sheriff of Hinds County they have a duty to hire, supervise, train and discipline the staff at the facility and to ensure the facility's compliance with ACA standards, the laws and Constitutions of Mississippi and the United States.  Their duties also include reviewing, investigating and responding to prisoner grievances and complaints, and as employees of defendant, Hinds County, they were considered final policy makers for Hinds County Detention Center during their tenure as Sherriff, which includes the time of the events giving rise to this Complaint.

9. DPS COMMISSSIONERS: Marshall Fisher and Sean Tindell were, at relevant times, the Commissioner of the Mississippi Department of Public Safety and were responsible for the appointment, training, supervision, discipline and retention and conduct of all Mississippi Forensic Crime Laboratory personnel.  In addition, these commisioners were responsible for enforcing

the rules of Crime Lab, and for ensuring that the Crime Lab personnel obey the laws of the United States and the State of Mississippi. They are sued in their official capacity.

10. ALL DEFENDANTS: All of the above-named defendants were acting within the scope of their employment at the times of the incidents giving rise to this complaint. All defendants have acted under color of law in the State of Mississippi at all relevant times to this complaint. Their deprivations of the plaintiff's constitutional rights are set forth in the following statement of facts and causes of action.

## STATEMENT OF FACTS

**Unlawful Arrest and Detention**

11. This lawsuit arises out of the false arrest, unlawful detention, malicious prosecution, denial of due process and access to the courts and jail conditions that constituted cruel and unusual punishment that the plaintiff suffered for approximately twenty (20) months of pretrial detainment the custody of Hinds County, Mississippi. At minimum, plaintiff was incarcerated from July 8, 2019 until March 3, 2021, in a case involving circumstances that would make any reasonable person question whether or not any crime had been committed and where the victim's description of the suspect varied wildly from the plaintiff's appearance.

**June 25, 2019 Reported Home Invasion / Assault**

12. Upon information and belief that according to JPD records, on June 25, 2019, Officers responded to reports of a possible house burglary, home invasion, assault and attempted rape on Shady Oaks Street. Ms. Virgie Mae Hunt, an eighty-three-year-old (83yr old - DOB 5/17/1936) female alleged that she was assaulted by a black male about 6'0 to 6'2 with medium build, that the man grabbed her by the back of the neck as she entered her home, forcefully pushed her onto her kitchen floor, tore her pants in the front and pulled her shirt off. Ms. Hunt stated that the man pulled her across the kitchen floor into the hallway and hit her in the face with a closed fist three (3) times. Ms.

7

Hunt stated that she fought the man off and hit him with a vase.  (see Exhibit "A": Underlying Facts and Circumstances).[3]

13.     Upon information and belief that JPD records show: (1) Ms. Hunt had no visible bruises or injuries whatsoever.  (2) Ms. Hunt refused medical attention. (3) There was no sign of a struggle inside the house. (4) Nothing was taken from the house.[4]  (see Exhibit "B": Police Report).

14.     Upon information and belief that no person could, after viewing the alleged victim and the crime scene, believe there existed probable cause that the crimes alleged by Ms. Hunt had actually occurred.

**Investigation and False Arrest**

15.     Despite the fact that no prudent person could conclude that the crime alleged had been committed, JPD conducted an investigation to determine who had assaulted Ms. Hunt.

16.     DNA evidence was recovered from Ms. Hunt's house and sent to the Crime Lab.  The results of this DNA testing were never revealed to Plaintiff during his six hundred and four (604) days of pretrial detainment.  (see Exhibit "C": Preliminary Hearing Transcript at p. 13).  Plaintiff has never seen the DNA test results.[5]

17.     On July 2, 2019, Detective Terrance Jackson (JPD) investigated a different home invasion that had occurred on Queensroad.  During that investigation, a Queensroad resident explained that she saw the Plaintiff on that street on July 2, 2019, but didn't know the exact time.  This witness merely reported seeing Plaintiff on the Queensroad on July 2, 2019.  (see Preliminary Hearing Tr. at p. 6 and Exhibit "D" Photo Identification by Melissa Childress).

---

[3] This document was submitted in an effort to obtain an arrest warrant for Mr. Sheriff.
[4] The police report attached as exhibit B was produced by Officer M. Smith and references events that occurred on 6.25.22, however the date that the report was prepared is not legible.
[5] It is also evident from the police reports and preliminary hearing transcript that latent fingerprints were gathered at one or both of the crime scenes.  The State has never produced a crime lab report of any kind.

18.     Detective Terrance Jackson (JPD) stated at the preliminary hearing that he knew he did not have probable cause to charge Plaintiff with the Queensroad incident and so he put Plaintiff's picture into a photo array and brought it back to the 83-year-old Ms. Hunt, who identified him as her assailant by circling his picture out of the six (6) choices presented to her.  (see Exhibit "E": Photo Identification by Virginia Hunt).

19.     Plaintiff was arrested on July 8, 2019 and charged with the alleged home invasion and attempted rape.  It was not until March 8, 2021, that the State admitted that the alleged victim had dementia and moved to remand the charges.  The charges were remanded and Plaintiff was finally released, having been denied his freedom for approximately twenty (20) months.  (see Exhibit "F": Motion to Remand and Exhibit "G" Order to Remand to File).

**The Actions of JPD were Not Mere Negligence**

20.     JPD Officers lacked probable cause to believe that a crime had been committed, let alone committed by Mr. Sheriff.  Probable cause exists only when the facts and circumstances justify a man of average caution in the belief that a crime has been committed.  Any person of average caution would have reason to doubt the allegations made by Ms. Hunt.  Ms. Hunt said that she was punched three (3) times in the face with a closed fist by a man that was more than six-feet (6ft) tall with medium build after being violently dragged through her house.  She did not have one visible injury.  She claimed to have fought the man off, even breaking a vase over his head.  There were no signs of a struggle in the house.

21.     All the JPD Officers involved in this investigation knew that the alleged assault of Ms. Hunt almost certainly never took place.  They also knew that Mr. Sheriff was a full half foot shorter and of thinner build than Ms. Hunt's description of the alleged assailant.  Still, JPD officers presented a photo array in front of the elderly Ms. Hunt and included Plaintiff's photo in that array based on the fact that Mr. Sheriff had been seen by a different witness, on a different street, on a different day, at an

uncertain time.  Ms. Hunt selected Mr. Sheriff's photo out of the six choices presented to her in the array.  The array did not show Mr. Sheriff's height or build.[6]

22.     These efforts rise to more than just mistakes.  JPD Officers either maliciously and intentionally conducted their investigation to ensure that Tommy Lee Sheriff was arrested for the alleged crime or they acted in reckless disregard.

23.     JPD Officers sought and received an arrest warrant for Tommy Lee Sheriff by producing the photo array identification done by Ms. Hunt.  However, this was intentionally presented without any context.  None of the Officers involved in the investigation of this case raised the obvious problem that it did not appear at the scene that any crime had taken place, nor did they inform the municipal court that Mr. Sheriff was much smaller than the description given by the alleged victim.[7]

24.     The "Underlying Facts and Circumstances" submitted to Jackson Municipal Court by Detective Terrance Jackson, recounts Ms. Hunt's allegations and the photo array identification.  Det. Jackson fails to mention that the allegation was made by an elderly woman, that there was no corroborating evidence whatsoever at the scene and that there were numerous observations indicating that no crime had taken place.  There is also no mention of the fact that the only reason Mr. Sheriff was placed in the photo array was because a neighbor saw him at an unspecified time, on a different day, walking down a different street.[8]

25.     These omissions were intentional and were designed to ensure that an arrest warrant would issue even though there was insufficient probable cause that a crime had been committed.  It ensured that Plaintiff would be arrested for a crime that never occurred and was done with complete indifference to the well-being of Plaintiff.

**JPD Final Decision-Making Authority**

---

[6] See Exhibit E: Photo Array Identification by Ms. Hunt
[7] See Exhibit A: Underlying Facts and Circumstances.
[8] See Exhibit A: Underlying Facts and Circumstances

26.     Upon information and belief that one or more of the officers involved in the investigation of this case repeatedly raised concerns about whether or not a crime had taken place and/or that they did not believe Mr. Sheriff was guilty of the crime.

27.     Upon information and belief that one or more of the officers involved in the investigation of this case continued investigating even after Plaintiff had been arrested and that their continued investigating the matter and that additional concerns were expressed to their supervisors even after the judicial process had begun and Mr. Sheriff was being prosecuted.

28.     Upon information and belief that the supervisor(s), to whom these concerns were expressed acted with indifference to the well-being of Plaintiff and ordered that any continued investigation was to cease and that the case was to be closed regardless of any concerns about Plaintiff's actual innocence.

**JPD Training, Supervision, Policies and Procedures**

29.     Upon information and belief that JPD's training, supervision, policy and procedures associated with its officers' use of identification using photo arrays directly led to the misidentification of Plaintiff and his subsequent pretrial detainment.

30.     Upon information and belief that it is the practice of JPD to use photo array identification without sufficient probable cause to place the suspect in jeopardy of being misidentified.  There are only six photos in the photo array identifications conducted by JPD, which makes misidentifications very likely.  The failure to train and provide policies and procedures that would dissuade an officer from presenting a photo array to an elderly woman, who was clearly confused, proximately harmed the plaintiff.

31.     Upon information and belief that these actions are the result of poor training, supervision, policies and procedures of JPD.  JPD failed to sufficiently convey to its officers the risk of false

identifications.  Furthermore, JPD failed to train its officers to submit all pertinent facts when seeking an arrest warrant.

32.      Upon information and belief that the practice of including images of suspects in photo arrays without sufficient probable cause is such a common occurrence that it is rightly characterized as the policy and/or custom and the constitutional violations that result so frequent that the course of conduct warrants attribution to the City of Jackson and JPD.

**Pretrial Detainment and Denial of Access to Courts**

33.      Plaintiff maintained his innocence throughout his approximate twenty (20) month incarceration without trial and Plaintiff repeatedly petitioned the Hinds County Circuit Court for release.  (see Exhibit "H": Demand for Speedy Trial).

34.      JPD's policies and procedures regarding the production of discovery ensured that the evidence that would lead to Plaintiff's release were not turned over in a timely fashion.  By withholding police reports, investigative reports, lab reports, photographic evidence from Plaintiff's defense counsel, the DA's Office or both, JPD deprived Mr. Sheriff of meaningful access to the courts.

35.      That the practice of withholding evidence and/or not turning over evidence in a timely fashion is such a common occurrence that it is rightly characterized as policy and/or custom and the constitutional violations that result so frequent that the course and conduct warrants attribution to the City of Jackson and JPD.

36.      The Crime Lab did not return the results of DNA testing sent in from the crime scene. Plaintiff has never seen those results even after filing motion(s) to compel their discovery.  It is the only alleged physical evidence against the plaintiff and depriving him of those results denied Plaintiff meaningful access to the courts.

37.      Upon information and belief that the Mississippi Department of Safety fail to properly train, monitor or supervise or, in the alternative, maintained policies, procedures and/or practices that

caused the Crime Lab to only return results when they would assist authorities in obtaining

convictions.  The Crime Lab purposefully withholds test results that are potentially exculpatory.

**Pretrial Detainment and Cruel and Unusual Punishment**

38.     Upon information and belief that the conditions of the Jail during Plaintiff's unlawful

detainment constituted extreme deprivation that denied Plaintiff the minimal civilized measure of life's

necessities.

39.     That, during the period of Plaintiff's incarceration, the Jail was the subject of ongoing litigation

instituted by the department of justice for constitutionally violative conditions.[9] (see Exhibit "I":

Contempt and Show Cause Orders in US v. Hinds County et al, Cause No. 3:16-CV-489.)

40.     That Defendants during the time of Plaintiff's detainment, were aware of the illegal conditions

of the Jail.  They were also aware that it had been ordered by this Honorable Court to improve those

conditions, but failed to do so, opting instead to be in deliberate and ongoing contempt of this Court.[10]

41.     The failure of Hinds County and HCSO to implement policies and procedures in compliance

with this federal court orders left the Plaintiff in constant fear for his own safety and caused him to

suffer innumerable instances of abuse by other inmates.  The lack of policies and procedures ordered

by this federal courts coupled with the general neglectful operation of the Jail resulted in a situation in

which Plaintiff had a reasonable fear for his safety during the entirety of his confinement, even if he

was not being abused by other inmates in that moment.  The result is that the Plaintiff suffered

irreparable emotional and psychological damage.

**Qualified Immunity Not Applicable**

---

[9] <u>United States v. Hinds County et al</u>, United States District Court, S.D. Mississippi, Cause No. 3:16-CV-489.
[10] Exhibit I: Contempt and Show Cause Orders in US v. Hinds County et al, Cause No. 3:16-CV-489.

42.     The Defendants cannot be shielded by qualified immunity because their conduct was not objectively reasonable and violated clearly established statutory and constitutional rights of the Plaintiff that would have been known or should have been known to any reasonable person.

**Plaintiff Suffered and Continues to Suffer from his Unlawful Arrest and Detention**

43.     Plaintiff was arrested and falsely accused of a heinous sexual assault against an elderly woman and because of this he suffered multiple incidents of threats, abuses and physical trauma inflicted by other inmates.  He was denied his liberty for approximately twenty (20) months.  Plaintiff has suffered great pain and discomfort both physical, emotional and psychological damage from being falsely accused and deprived of his freedom for such a long duration.  This has prevented him from being gainfully employed, leading to lost income.  The severe emotional and psychological damage have caused him to suffer loss of enjoyment of life.

## DAMAGES

44.   As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries:

a.   Violation of his right pursuant to the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable search and seizure of their person.

b.   Violation of his right to Due Process of Law under the Fifth and Fourteenth Amendments to the United States Constitution.

c.   Violation of his right to be free of cruel and unusual punishment under the Eighth Amendment to the Constitution.

d.   Violation of Mississippi Constitutional right under Article 3 Section 23.

e.   Violation of Mississippi Constitutional right under Article 3 Section 14.

f.   Physical pain and suffering.

g.   Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, and loss of enjoyment of life.

14

h.  Loss of income.

i.  Loss of future wages.

j.  Loss of liberty.

## First Cause of Action
(42 USC §1983)

45.  The preceding paragraphs are incorporated herein by reference.

46.  Defendants have deprived Plaintiff of his civil, constitutional and statutory rights under color of law and are liable to plaintiff under 42 USC §1983.

47.  Defendants' conduct deprived plaintiff of his rights under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

48.  Defendants falsely arrested Plaintiff without probable cause sufficient to warrant a reasonable person in believing that any crime had been committed, depriving him of his freedom for approximately twenty (20) months, incarcerated him in a jail that they knew to be constitutionally inadequate, exposing him to extreme deprivations that denied him the minimal civilized measure of life's necessities. All of the named defendants failed to intervene in each other's obviously illegal actions.

49.  Defendant's conduct resulted in Plaintiff's illegal seizure, loss of liberty for approximately twenty (20) months, cruel and unusual punishment in the Jail, and denial of due process and meaningful access to the courts by withholding potentially exculpatory crime lab reports from him.

50.  That defendants either intentionally caused the harm suffered by Plaintiff or acted with deliberate indifference to the substantial risk of harm to Plaintiff.

51.  Plaintiff has been suffered damages, physical, mental and emotional, as a result of the defendants' wrongful acts.

## Second Cause of Action
(Municipal and State Agency Supervisory Liability)

15

52.   The above paragraphs are incorporated here by reference.

53.   The City, JPD, DPS, Hinds County, and HCSO, are liable for the damages suffered by Plaintiff as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of plaintiff's constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.

54.   The City of Jackson has been alerted to the regularity of false arrests by JPD officers, but has nevertheless exhibited deliberate indifference to such false arrests.  The City and JPD were aware that the improper use of photo array identification is a key factor that leads to false arrests.  A combination of the City's policies and practices, gross negligence, reckless disregard and deliberate indifference caused the violations of Plaintiff's constitutional rights.

55.   The Mississippi Department of Public Safety is aware of the problems presented by delays and non-disclosures of test results at the Crime Lab and nevertheless exhibited deliberate indifference to those problems; that a combination of policies and practices, gross negligence, reckless disregard and deliberate indifference caused the violations of Plaintiff's constitutional rights.

56.   Hinds County, Mississippi and the Hinds County Sheriff(s) Office had been alerted to the unconstitutional and illegal conditions of the Jail and nevertheless exhibited indifference to those conditions, going so far as to be in direct contempt of this Honorable Court's Orders; that a combination of policies and practices, gross negligence, reckless disregard and deliberate indifference caused the violation of plaintiff's constitutional rights.

### Third Cause of Action
(Conspiracy)

57.   The preceding paragraphs are incorporated here by reference.

58.  Defendants agreed to violate Plaintiffs' rights in the manner described above.  Plaintiff's false arrest was not orchestrated by merely one individual.  Defendants agreed and behaved in a manner designed to ensure that plaintiff remained in pretrial detainment and ensured that he would not have meaningful access to the courts.

59.  Defendants took actions in furtherance of this agreement by placing Plaintiff in a photo array with insufficient probable cause in case where there was every reason to believe that no crime had taken place, misleading the courts by applying for an arrest warrant but leaving out critical facts and circumstances indicating a lack of probable cause that any crime had been committed and omitting that Plaintiff did not match the height and build description given by the alleged victim.

60.  Then, having caused the false arrest of Plaintiff, they took further action to deny him due process by concealing from the courts and prosecutors, at every stage of the proceedings, highly exculpatory information, ensuring that Plaintiff would not have any meaningful access to the courts.

61.  Upon information and belief that concerns regarding Plaintiff's innocence and the likelihood that no crime had been committed were conveyed to superiors within JPD and that these superiors / final decision makers forbade any further investigation, conspiring instead to close the case.

62.  These actions proximately caused the false arrest and unlawful detention of Plaintiff for twenty (20) months.

### Fourth Cause of Action
(Constitutional Tort)

63.  The above paragraphs are incorporated here by reference.

64.  Defendant City, JPD, JPD Officers, Hinds County, and HCSO owed a duty of care to plaintiff to prevent the loss of liberty and abuse sustained by Plaintiff.

17

65.   Defendant City, through JPD, owed a duty of care to Plaintiff because under the same circumstances a reasonable, prudent and careful person should have anticipated an injury to plaintiff or those in a position similar to Plaintiff's as a result of this conduct.

66.   Upon information and belief, defendant JPD officers and jail personnel were incompetent and unfit for their positions.

67.   Upon information and belief, defendants knew or should have known through exercise of reasonable diligence that the officers were potentially dangerous and had previously falsely arrested civilians without probable cause and that the conditions of the Jail, which violated the constitutional rights the persons housed there, was known to them.

68.   That Defendants knew that the heinous accusations of assault and attempted rape of an elderly woman made against Plaintiff would be public record and known to the other inmates in the jail and this would place Plaintiff in even greater danger of abuse within the Jail.

69.   Defendant City's negligence in hiring, retaining and supervising of JPD Officers and Jail personnel proximately caused plaintiff's injuries.

### Fifth Cause of Action
(Mississippi Tort Claims Act): Malicious Prosecution

70.   The above paragraphs are incorporated here by reference.

71.   The actions of all defendants employed by JPD and the City of Jackson itself constituted malicious prosecution, when they acted with either malice or reckless disregard for the safety and well-being of the Plaintiff by falsely imprisoning him without probable cause.

72.   Mississippi jurisprudence provides that reckless disregard encompasses both gross negligence and willful or wanton conduct.  The tort of Malicious Prosecution is defined in Mississippi as: (1) The institution of criminal proceedings, (2) by, or at the insistence of the defendant, (3) the termination of such proceedings in the plaintiff's favor, (4) malice in instituting the proceedings,

18

(5) want of probable cause for the proceedings, (6) the suffering of injury or damage as a result of the prosecution.  All of these elements are present in this case.

73.   The actions of the defendants, described in detail above, directly resulted in the damage(s) suffered by the Plaintiff.

74.   That Plaintiff has complied with the notice requirements of the Mississippi Tort Claims Act.

75.   That the defendants are liable to the Plaintiff pursuant to the Mississippi Tort Claims Act.

## PRAYER FOR RELIEF

Plaintiff, Tommy Lee Sheriff, requests a jury trial and seeks the following relief.

A.   In favor of Plaintiff, awarding Plaintiff compensatory damages in an amount to be determined by a jury for each of plaintiff's causes of action;

B.   Awarding Plaintiff punitive damage in an amount to be determined by a jury;

C.   An award of the costs of this action against all defendants including reasonable attorneys' fees, in accordance with 42 U.S.C. §1988 and/or 18 U.S.C. §1964(c);

D.   Pre and Post judgment interest; and

E.   Any other relief that the Court deems appropriate.

**RESPECTFULLY SUBMITTED**, July 8th, 2022,

/s/ *William C. Coon*
WILLIAM C. COON
Attorney for Tommy Lee Sheriff

OF COUNSEL:

WILLIAM C. COON (MB# 103857)
ROBERT ADDISON (MB# 1152)
MATTHEW THOMPSON (MB# 101901)
MICHAEL KELLY (MB # 103547
THOMPSON ADDISON, PLLC
2060 MAIN STREET
MADISON, MS 39110
TELEPHONE: 601.850.8000
FACSIMILE 601.499.5219

19

## **CERTIFICATION**

Pursuant to Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**SO CERTIFIED**, Wednesday, July, 8th, 2022.

/s/ *William C. Coon*
Attorney for Tommy Lee Sheriff
Thompson and Addison, PLLC
2060 Main Street
Madison, MS 39110
Phone: 601.850.8000
Fax: 601.499.5219

20