IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

TOMMY LEE SHERIFF,
                    Plaintiff

v.                                              Civil No. 3:22-cv-00392-TSL-RPM

CITY OF JACKSON, et al.
                    Defendants

---

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF
PLAINTIFF'S RESPONSE IN OPPOSITION TO
JAMES E. DAVIS' MOTION TO DISMISS**

---

### INTRODUCTION

Plaintiff, Tommy Lee Sheriff, was arrested by Officers of the Jackson Police Department, acting under color of law, for allegedly committing the heinous crimes of home invasion, assault and attempted rape of an elderly woman. The alleged victim, Ms. Virginia Hunt, reported that her assailant was over 6-feet-tall with medium build and that he punched her multiple times in the face, dragged her across the floor and attempted to rape her. Ms. Hunt, who was 83-years-old at the time, reported that she fought off the assailant by breaking a vase over his head, which caused the man to flee.

There was a total lack of corroborating evidence to lead a reasonable person to believe that Ms. Hunt's statements were trustworthy. There were no signs of a struggle, there was no broken vase and Ms. Hunt suffered no injuries despite the

vicious assault she was reporting. There was no probable cause to believe that Mr. Sheriff was at or near the scene of the crime alleged by Ms. Hunt. Despite this, JPD Officers conducted a photo array identification wherein Ms. Hunt identified Mr. Sheriff. JPD Officers then presented that photo array identification in order to obtain an arrest warrant, intentionally omitting facts that strongly suggested that no crime had occurred and omitting the fact that Mr. Sheriff differed greatly in appearance from the description of the assailant given by Ms. Hunt.[1] This resulted in Mr. Sheriff being illegally arrested without probable cause.[2]

Contrary to James E. Davis' [Chief Davis] assertions in his motion to dismiss, Plaintiff's First Amended Complaint did allege that this photo array misidentification was due to JPD's policies and procedures and failure to properly train or supervise its officers in the area of photo array identification.[3] Plaintiff's First Amended Complaint must be read with all reasonable inferences and the benefit of every doubt given to the Plaintiff. Det. Jackson is asking the Court to do the exact opposite and read into the First Amended Complaint assumptions, facts and inferences that favor him. Det. Jackson's motion is meritless and should be denied.

ARGUMENT

### A. Motions to Dismiss

---

[1] Exhibit "B": Sheriff NCIC: Lists Mr. Sheriff as being 5'6 (137 lbs.).
[2] First Amended Complaint [5] at ¶ 12 and Exhibit "A" Underlying Facts and Circumstances.
[3] First Amended Complaint [5] at ¶¶ 29-32.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Plausibility, rather than probability is the standard by which a complaint is to be evaluated. Indeed, even if the judge believes "that a recovery is very remote and unlikely," the complaint should withstand a motion to dismiss if relief is plausible. *Twombly*, 550 U.S. at 556.

## B. Qualified Immunity

Qualified immunity generally protects officers from civil liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action assessed in light of the legal rules that were clearly established at the time it was taken." *Id.* at 639 (citations omitted).

In analyzing a qualified immunity defense, "courts may not resolve genuine disputes of fact in favor of the party seeking [dismissal]." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

## C. Chief Davis is Not Entitled to Qualified Immunity

### 1. Failure to Train and Supervise

"When, as here, a plaintiff alleges a failure to train or supervise, 'the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'" *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).[4]

a. *Chief Davis failed to train subordinate officials*

In Chief Davis' memorandum of authorities in support of his motion to dismiss he states that "there is no allegation of a specific act committed by Defendant Davis Against Plaintiff."[5] However, it is precisely Chief Davis failure to act that Plaintiff alleges caused him harm.[6] During initial disclosures in this case, Chief Davis provided Plaintiff with all documentation related to training and guidance of JPD Officers in conducting photo array identifications. This document is only three (3) pages long and it contains the entire manual used by JPD for eye witness identifications of any kind. The portion relating to photo array line-ups takes up one-third of one page and includes only five bullet points.[7] This means that there are only five instructions given to JPD Officers regarding procedures for conducting photo array lineups.

---

[4] See also *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir.1998); see *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir.2003); *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir.2003); *Thompson*, 245 F.3d at 459; *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452–54 & nn.7–8 (5th Cir.1994) (en banc) (adopting the *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), standard of municipal liability—that is, requiring at least deliberate indifference—for supervisory liability).

[5] Memorandum of Authorities in Support of Chief Davis' Motion to Dismiss [30] at p. 18(A).

[6] First Amended Complaint [5] at ¶¶ 29-32.

[7] Exhibit "C": General Order re Eye Witness Identification

These instructions do not include the importance that there be sufficient probable cause to believe that a crime actually occurred. It does not instruct the officer that a photo array lineup is not appropriate where there is a large discrepancy between the suspect's size and the description given by the witness. It merely, instructs the officer to ensure that the "fillers" match the witness's description regarding size.[8] This means that the suspect need not match the size description given by the witness and, if there is a large discrepancy, the facial features will stand out when placed beside persons that are much larger or smaller than them.

No other documents or information of any kind was provided to Plaintiff regarding policies, procedures, training, or supervision of officers conducting photo array identifications. The document provided by Chief Davis is therefore the sum of all documentation regarding JPD policies, training and supervision of officers in their conduction of photo array identifications. It does not state the amount of time JPD Officers spend training to ensure that they avoid misidentifications. It does not state any software that is to be used in order to avoid misidentifications. It does not provide any instruction regarding what constitutes probable cause sufficient to place a suspect in a photo array lineup. It does not contain any instruction on how to analyze the reliability of an eyewitness' statements.

Plaintiff can only conclude that no information regarding these matters was provided because that training and supervision does not occur. There is, as Plaintiff

---

[8] "Filler" is defined within the document as the a person or photograph of a person who is not suspected of an offense and is included in a lineup.

alleged in his complaint, a complete failure to train JPD officers or implement procedures to avoid misidentifications in photo array lineups.[9]

    b.  *Causal Link*

In this case, there is a clear causal link between the failure to train JPD officers and the false arrest of Mr. Sheriff. As stated above, Ms. Hunt's described her assailant as being over 6-feet-tall with medium build. Mr. Sheriff is 5'6 and weighs 134 lbs.[10] Ms. Hunt is listed as being 5'9 140 lbs.[11] Any reasonable person would conclude that Ms. Hunt would know whether or not her assailant was bigger than her.

The manual provided to JPD officers regarding eyewitness identification, including photo array line-ups, does not mention that the suspect needs to approximately match the size of the description provided by the witness.[12] Neither does it state that if there is probable cause to believe that a suspect not match the eyewitnesses' size description, then the filler photos need to be of persons approximately the size of the suspect. This training is necessary to avoid suggestive lineups and misidentifications because the face of a shorter man will stand out when placed beside the faces of much larger men . The training did not occur and led to Mr. Sheriff being falsely identified by Ms. Hunt as her assailant.

The manual provided to JPD officers regarding eyewitness identification, including photo array line-ups, does not instruct officers to take into account the

---

[9] First Amended Complaint [5] at ¶29-32
[10] Exhibit "B": Sheriff NCIC: Lists Mr. Sheriff as being 5'6 (137 lbs.).
[11] Exhibit "A": Incident Report Form: Lists Ms. Hunt being 5'9 (140 lbs.).
[12] Exhibit "C": General Order re Eye Witness Identification at p. 2.

trustworthiness of the eyewitness when conducting photo array lineups.[13]  Ms. Hunt reported a violent assault wherein she was punched in the face multiple times dragged across the floor and broke a vase over the intruder's head.  Ms. Hunt suffered no injuries and there were no signs of a struggle observed in her home.  Ms. Hunt was 83-years-old and later found to be suffering from dementia.

JPD officers should have been instructed and trained to assess the trustworthiness of an eyewitness before conducting a photo array identification with them.  There is nothing in the materials provided by Chief Davis that requires officers to assess the eyewitness' trustworthiness before conducting a photo array identification with them.  Mr. Sheriff was misidentified in a photo array lineup by an 83-year-old woman suffering from dementia.  That identification was the only probable cause submitted by JPD officers in obtaining an arrest warrant.[14]  There is therefore a direct causal link between the failure to train JPD officers in their use of photo array lineups and the false arrest of Mr. Sheriff in violation of his fourth and fourteenth amendment rights.

### c. *Deliberate Indifference*

"Deliberate indifference is a stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  Deliberate indifference may be found in two types of situations: (1) a general failure to provide adequate training in light of the foreseeable serious consequences that

---

[13] Id.
[14] First Amended Complaint [5] Exhibit "A": Underlying Facts and Circumstances

could result, and (2) a municipality fails to act in response to the specific need to train a particular officer." *Hobart v. Estrada*, 582 F. App'x 348, 357 (5th Cir. 2014).[15]

Plaintiff alleges that there was a general failure to provide adequate training in light of the foreseeable serious consequences that could result from the failure to train officers in the proper procedures for photo array lineups. As discussed above, the training that JPD Officers receive regarding proper procedures for conducting photo array lineups is inadequate. The sum of all training and policies on this issue amounts to five instructions that are contained on one-third of one page of a three-page document constituting the entire eyewitness identification manual given to JPD officers.

During a photo array lineup, even if the eyewitness is blindfolded, there is a one in six chance that an eyewitness will select the suspect in a photo array. The high probability of photo array misidentifications is foreseeable. The consequences of misidentifications are serious. Photo array identifications are used as evidence to arrest, charge and convict people of serious criminal offenses. In Mr. Sheriff's case, if this misidentification had been successfully used to convict him, he could have spent the rest of his life in prison for a crime that did not occur. Anyone, including Chief Davis, can foresee that misidentification by eyewitnesses has very serious consequences. The eyewitness training provided to JPD officers to avoid photo array misidentifications amounted to no training. That failure to train guarantees that

---

[15] See also Valle v. City of Houston, 613 F.3d 536, 547 (5th Cir.2010); *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Brown v. Bryan Cnty.*, 219 F.3d 450, 457 (5th Cir.2000).

such misidentifications will happen and happen frequently and that innocent persons will be falsely arrested and serve large amounts of time incarcerated. In the instant case, Mr. Sheriff spent twenty (20) months incarcerated for a crime that never happened.

### 2. _Independent Intermediary Doctrine_

As discussed in Plaintiff's response to Det. Jackson's motion to dismiss based on qualified immunity, The Jackson Municipal Court issued an arrest warrant for Plaintiff based on the application for an arrest warrant prepared by JPD officers and signed by Detective Terrance Jackson's application on July 8, 2019.[16] Subsequently, a grand jury indicted Mr. Sheriff for the fantastical crimes that Ms. Hunt reported but did not actually occur. However, the issuance of an arrest warrant by an independent intermediary is not an absolute shield against liability for false arrest and Det. Jackson's reliance on _Craig v. Dallas Area Rapid Transit Authority_ and _Buehler v. City of Austin_ is misplaced.[17]

Chief Jones' reliance on these cases is also misplaced. The independent intermediary doctrine potentially insulates the "initiating party" from liability. _Smith v. Gonzales_, 670 F.2d 522, 526 (5th Cir.1982).[18] Plaintiff does not allege that

---

[16] First Amended Complaint [5] at Exhibit "A" Underlying Facts and Circumstances

[17] _Craig v. Dallas Area Rapid Transit Authority_ , 504 Fed. Appx. 328, 332 (5th Cir. 2012) stating, "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the **initiating party**.

[18] See also _Buehler v. City of Austin/Austin Police Dep't_, 824 F.3d 548, 554 (5th Cir. 2016) "Under this doctrine, "even an officer who acted with malice ... will not be liable if the facts supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or a grand jury, for that intermediary's 'independent' decision 'breaks the causal chain' and insulates the **initiating party**."

Chief Jones initiated his illegal and false arrest. Therefore, the independent intermediary doctrine does not insulate Chief Jones from liability. As stated above, the test for liability for failure to train or supervise is (1) the failure to supervise, (2) a causal link between the failure and the violation of the plaintiff's rights, and (3) these failures amount to deliberate indifference. *Est. of Davis ex rel. McCully, supra.* None of the authorities cited by Chief Jones apply the independent intermediary doctrine to claims relating to a failure to adequately train subordinate officers.

## CONCLUSION

Plaintiff's allegations, taken as true, state plausible claims for relief against Chief Jones pursuant to § 1983 for violation of Plaintiff's of clearly established constitutional rights. Chief Jones' motion should be denied, with prejudice.

Dated: June 20, 2023.

Respectfully Submitted,

**TOMMY LEE SHERIFF**

By: *s/ William C. Coon*

William C. Coon – MS Bar # 103857
william@thompsonaddison.com
Thompson Addison, pllc
2060 Main Street
Madison, MS 39110
Phone: 601.850.8000
Fax: 601.499.5219

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2023, I electronically filed the foregoing motion with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

*s/ William C. Coon*