UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


TOMMY LEE SHERIFF                                        PLAINTIFF

VS.                          CIVIL ACTION NO. 3:22-cv-392-TSL-RPM

CITY OF JACKSON, MISSISSIPPI;
CHIEF OF POLICE JAMES E. DAVIS;
OFFICER MIRON B. SMITH;
INVESTIGATOR STEPHANIE HORN;
OFFICER MYKILA WALKER;
DETECTIVE TERRANCE JACKSON;
OFFICER ROBERT TAYLOR;
HINDS COUNTY, MISSISSIPPI;
SHERIFF LEE D. VANCE;
SHERIFF TYREE JONES;
MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY;
MISSISSIPPI FORENSIC LABORATORY;
COMMISSIONER MARSHALL FISHER;
COMMISSIONER SEAN TINDELL; AND
OFFICERS JOHN DOES 1-3

MEMORANDUM OPINION AND ORDER

This cause is before the court on the separate motions of

defendants James E. Davis, Terrance Jackson, Miron Smith,

Stephanie Horn, Mykila Walker and Robert Taylor, in their

individual capacities, to dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(6).  Plaintiff Tommy Lee Sheriff has not

responded to the motions of Smith, Horn, Walker or Taylor, but he

has responded in opposition to the motions of defendants Davis and

Jackson.  The court, having considered the memoranda of

1

authorities submitted by the parties, concludes that defendants' motions should be granted.

Background

Sheriff was arrested in July 2019 and jailed on charges of house burglary and kidnapping.  He remained incarcerated in the Hinds County Detention Center for approximately twenty months awaiting trial, until March 2021, when the charges were dismissed because the alleged victim declined to testify, asserting she had dementia and could not remember details of the attack.  Sheriff filed the present action in July 2022 against the City of Jackson, Jackson Police Chief James E. Davis and several Jackson Police Department (JPD) officers, among others,[1] asserting federal claims

---

1    In addition to these City defendants, plaintiff also sued the Mississippi Department of Public Safety (MDPS), MDPS Commissioner Sean Tindell and former Commissioner Marshall Fisher, asserting due process claims relating to the alleged failure of the State Crime Lab to timely test and return the results of DNA testing from the alleged crime scene.  Those defendants were dismissed based on Eleventh Amendment immunity by order entered on November 2, 2022.

Plaintiff also sued Hinds County, Hinds County Sheriff Tyree Jones and former sheriff Lee Vance, purporting to assert claims against them relating to alleged unconstitutional conditions of confinement at the Hinds County Jail during his period of incarceration.  Process was never issued as to Vance, who is now deceased, and plaintiff's individual capacity claims against Jones have been dismissed as Jones was not the sheriff during the events at issue and is not alleged to have had any personal involvement in these events.  Hinds County remains a defendant, and although it is doubtful the complaint states any viable claim against it, the court elects not to address that question *sua sponte*.

under 42 U.S.C. § 1983 of false arrest and false imprisonment in violation of the Fourth Amendment, denial of his Fourteenth Amendment right of access to the courts, and conspiracy to violate his constitutional rights,[2] and also asserting a state law malicious prosecution claim.

Rule 12(b)(6) Standard

City defendants Davis, Jackson, Smith, Horn, Walker and Taylor, in their individual capacities, have moved pursuant to Rule 12(b)(6) to dismiss all plaintiff's claims against them because they have qualified immunity or, alternatively, because the complaint does not state a claim against them in any event,

---

[2]   Plaintiff's amended complaint sets out five "cause[s] of action."  The first, labeled "Section 1983," recites that "Defendants' conduct deprived plaintiff of his rights under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution," without specifying which defendants are alleged to have violated which of plaintiff's constitutional rights.  The second, denominated "Municipal and State Agency Supervisory Liability," alleges that policies of the City of Jackson, Hinds County and MDPS caused the violation of his constitutional rights.  The "Conspiracy" cause of action is based on plaintiff's charge that "defendants" conspired to cause his false arrest and then "agreed and behaved in a manner designed to ensure that plaintiff remained in pretrial detainment and ensured that he would not have meaningful access to the courts" by withholding exculpatory information.  The cause of action for "Constitutional Tort," directed against the City of Jackson, alleges the City's "negligence in hiring, retaining and supervising of JPD Officers and Jail personnel proximately caused plaintiff's injuries."  Finally, the fifth claim is a state law claim for malicious prosecution.

irrespective of whether they have immunity.  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id., 129 S. Ct. 1937.

In evaluating motions to dismiss under Rule 12(b)(6), the court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff."  In re Great Lakes Dredge & Dock Co., 624 F.3d 201, 210 (5th Cir. 2010).  However, the court will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."  Heinze v. Tesco Corp., 971 F.3d 475, 479 (5th Cir. 2020).  "In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to [] (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under

Federal Rule of Evidence 201." <u>Walker v. Beaumont Indep. Sch.</u>
<u>Dist.</u>, 938 F.3d 724, 735 (5th Cir. 2019).

"The doctrine of qualified immunity protects government
officials from civil damages liability when their actions could
reasonably have been believed to be legal." <u>Morgan v. Swanson</u>,
659 F.3d 359, 370 (5th Cir. 2011). "When a defendant asserts
qualified immunity, the plaintiff bears the burden of pleading
facts that demonstrate liability and defeat immunity.  The
plaintiff must show '(1) that the official violated a statutory or
constitutional right, and (2) that the right was clearly
established at the time of the challenged conduct.'" <u>Shaw v.</u>
<u>Villanueva</u>, 918 F.3d 414, 416-17 (5th Cir. 2019) (quoting <u>Whitley</u>
<u>v. Hanna</u>, 726 F.3d 631, 638 (5th Cir. 2013)).

<u>Plaintiff's Complaint</u>

Plaintiff has attached to his amended complaint numerous
documents, including the initial police report regarding the
incident that led to his arrest; the application for an arrest
warrant; a transcript of the preliminary hearing; a motion seeking
remand of the charges; and the order remanding the case to the
file.  These various documents reflect the following series of
events.

On June 25, 2019, defendant Jackson responded to a call
regarding a possible house burglary and kidnapping at a home on
Shady Oaks Street in Jackson.  The victim, Virgie Hunt, reported
that as she was in her backyard, putting trash in her trash can, a
black male grabbed her, dragged her up the back stairs, used her
body to ram the back door open, forced her into the home and
forced her onto the floor; he tore her pants and removed her
shirt, and during the attack, hit her in the face with his closed
fist about three times.  Ms. Hunt was able to hit her attacker
with a vase and escape out the front door.  She described her
attacker as a black male, about 6'0" to 6'2", medium build,
wearing old blue jeans and a white button-down shirt.

A week after Ms. Hunt's reported attack, JPD received a
report of another similar attack at a home on nearby Queensroad
Avenue.  The victim in that incident reported that as she was
behind her house taking out the trash, a black male grabbed her
from behind and forced her into her home; he proceeded to remove
her clothing and attempt to rape her.  She was able to reach under
a pillow and pull out a gun, which went off.  Her attacker grabbed
the gun and left the home.

The victim in the Queensroad incident did not see her
attacker's face and was able to describe him only as a black male,

wearing a black shirt and red pants.  During the investigation of
the Queensroad incident, a neighbor of the victim told police she
had seen Sheriff, whom she knew from around the neighborhood, on
the street prior to the attack, wearing a black shirt and red
pants.  With this information, Detective Jackson presented Ms.
Hunt, the victim in the Shady Oaks attack, a six-man photo lineup
that included Sheriff.  Ms. Hunt identified Sheriff as her
attacker; she reportedly had no doubt that he was the man who
attacked her.

Detective Jackson requested a warrant for Sheriff's arrest.
In the warrant application, he recited the underlying
circumstances of the attack as reported by Ms. Hunt and recounted
her positive identification of Sheriff from the photo lineup.  A
warrant was issued, and Sheriff was arrested on July 8, two weeks
following the attack of Ms. Hunt.  Subsequently, at an August 5,
2019 preliminary hearing before the county court, Detective
Jackson testified on direct examination and on cross-examination
by Sheriff's attorney to all of the foregoing.  Following the
hearing, the court found there was probable cause to believe the
offenses of house burglary and kidnapping had been committed and
that Sheriff had committed these offenses.  The judge ordered
Sheriff bound over to await action of the grand jury and set bail

7

at $1,000,000.  Sheriff was later indicted by a grand jury on February 7, 2020 of house burglary and kidnapping.

The trial was eventually set to begin in March 2021. However, on March 3, 2021, less than a week before the scheduled trial date, the prosecutor moved to remand the charges to the file.  She represented in the motion that in preparation for trial, she had met with the victim several times, including on October 28, 2020, December 8, 2020 and February 26, 2021, and on each of these occasions, Ms. Hunt had described her attack in great detail; but on March 1, after receiving a subpoena to testify, Ms. Hunt had contacted Sheriff's counsel, Assistant Public Defender Lauren Hillery, and reported that she had dementia and did not remember the events for which she was being subpoenaed to testify, and she stated that she did not want to testify. Based on the prosecutor's representation that the State could not meet its burden of proof without Ms. Hunt's testimony, the charges were remanded and plaintiff was released from custody.

ANALYSIS

Smith, Walker, Horn and Taylor

Defendants Smith, Walker, Horn and Taylor have moved to dismiss plaintiff's complaint for failure to state a claim, arguing, among other things, that the complaint contains no

8

allegation of misconduct against them.  They are correct.  The
complaint's single reference to Walker, Taylor and Horn merely
identifies them as JPD officers.  It does not allege what, if any,
involvement they had in the events that are the subject of the
complaint.  As to Smith, plaintiff's only allegation is that he
prepared a police report on the alleged incident at issue.  There
is no allegation of any misconduct by Smith.  Accordingly,
plaintiff's complaint against these defendants will be dismissed.

FOURTH AMENDMENT – Defendant Jackson

To prevail in a § 1983 claim for false arrest and/or false
imprisonment, a plaintiff must show that he was arrested/detained
without probable cause in violation of the Fourth Amendment.  Parm
v. Shumate, 513 F.3d 135, 142 (5th Cir. 2007) (false arrest);
Manuel v. City of Joliet, 580 U.S. 357, 367, 137 S. Ct. 911, 197
L. Ed. 2d 312 (2017) ("If the complaint is that a form of legal
process resulted in pretrial detention unsupported by probable
cause, then the right allegedly infringed lies in the Fourth
Amendment 'false imprisonment.'").

Detective Jackson argues that plaintiff's complaint does not
state a claim against him upon which relief can be granted as
there is no allegation in the complaint that he did anything other
than investigate and charge plaintiff with a crime.  He maintains

9

that plaintiff cannot establish a violation of his Fourth
Amendment rights since independent intermediaries – a municipal
court judge, a county court judge and a grand jury – found there
was probable cause for his arrest and detention.

Under the independent intermediary doctrine, which applies to
claims which depend on a lack of probable cause to arrest/detain,
an officer

> "will not be liable if the facts supporting the warrant
> or indictment are put before an impartial intermediary
> such as a magistrate or a grand jury, for that
> intermediary's 'independent' decision 'breaks the causal
> chain' and insulates the initiating party." Hand v.
> Gary, 838 F.2d 1420, 1427 (5th Cir. 1988) (quoting Smith
> v. Gonzales, 670 F.2d 522, 526 (5th Cir. 1982)). Our
> precedents have applied this rule even if the
> independent intermediary's action occurred after the
> arrest, and even if the arrestee was never convicted of
> any crime.

Buehler v. City of Austin/Austin Police Dept., 824 F.3d 548, 554
(5th Cir. 2016) (additional citations omitted).  There are
exceptions to this rule.  First, in accordance with the Supreme
Court's holding in Franks v. Delaware, 438 U.S. 154, 155-56, 98 S.
Ct. 2674, 57 L. Ed. 2d 667 (1978), an independent intermediary's
probable cause finding does not protect law a enforcement official
who "knowingly and intentionally, or with reckless disregard for
the truth, includes a false statement in a warrant application,"
where the false statement is necessary to a finding of probable

cause, or who "intention[ally] or reckless[ly] omit[s] material facts from a warrant application," and the omission is "clearly critical" to a finding of probable cause. Porter v. Lear, 751 Fed. Appx. 422, 429 (5th Cir. 2018) (quoting Kohler v. Englade, 470 F.3d 1104, 1113 (5th Cir. 2006) (citing Franks), and citing Hale v. Fish, 899 F.2d 390, 400 (5th Cir. 1990)). "[A]n officer need not include all potentially exculpatory evidence in a warrant application," but he may not intentionally omit critical information from the affidavit. Turner v. Criswell, 2020 WL 1901086, at *7 (E.D. Tex. 2020) (citing Porter, 751 Fed. Appx. at 430-31),

A plaintiff can also overcome the independent intermediary doctrine by showing that the affidavit presented to the intermediary to obtain the warrant was "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." Malley v. Briggs, 475 U.S. 335, 344-45, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986). In contrast to Franks, "[t]he Malley wrong is not the presentment of false evidence, but the obvious failure of accurately presented evidence to support the probable cause required for the issuance of a warrant." Melton v. Phillips, 875 F.3d 256, 264 (5th Cir. 2017) (en banc) (citing Michalik v. Hermann, 422 F.3d 252, 261 (5th Cir. 2005)). "If a

11

reasonably well-trained officer in [the defendant's] position
would have known that the affidavit failed to establish probable
cause and that he should not have applied for the warrant," he
will not be insulated from liability.  Malley, 475 U.S. at 345,
106 S. Ct. at 1098.

Plaintiff acknowledges in his complaint that there were three
separate probable cause determinations:  first, based on Jackson's
affidavit, a municipal court judge found probable cause to issue
an arrest warrant; then a county court judge, following a
preliminary hearing, found probable cause to detain him; and
lastly, a grand jury found probable cause and returned an
indictment against him.  He argues, however, that the independent
intermediary doctrine does not insulate Jackson from liability
because Jackson, in his application for the arrest warrant,
intentionally omitted material information which would have shown
that there was no probable cause even to believe that the alleged
assault actually occurred, much less to believe that Sheriff had
committed the alleged offenses.

"In considering the actions of multiple independent
intermediaries, the Court need only consider whether one act was
sufficient to break the casual chain and immunize [the
defendant]."  Poullard v. Gateway Buick GMC LLC, 2021 WL 4244781,

at *6 (N.D.Tex. Sept. 17, 2021) (citing <u>Buehler v. City of Austin/Austin Police Dep't</u>, No. A-13-CV-1100-ML, 2015 WL 737031, at *13 n.5 (W.D. Tex. Feb. 20, 2015) ("In light of the grand jury's independent role in finding probable cause, the Court ... declines to address Defendants' contention that the magistrate's warrants insulate the Officers by breaking the chain of causation. Similarly, the Court declines to address Buehler's contention that the arrest warrants did not insulate the Officers because the Officers lied or omitted material facts in the warrant affidavits."), <u>aff'd</u>, 824 F.3d 548 (5th Cir. 2016)).

Plaintiff's amended complaint asserts various alleged material omissions by defendant Jackson *in the application for an arrest warrant*.[3]  The complaint mentions the preliminary hearing, and a copy of the hearing transcript is attached to the complaint; but nowhere in the complaint does plaintiff allege that Jackson intentionally or recklessly withheld material information in the hearing.  Notably, while plaintiff's public defender questioned Jackson at the hearing, she did not question him about any of the allegedly omitted facts that plaintiff now claims were material, nor did she present evidence bearing on any of these issues on

---

[3]   As fully explained *infra*, the court finds that none of the alleged omissions is, in fact, material to the determination of probable cause for plaintiff's arrest.

plaintiff's behalf.  Moreover, plaintiff has not responded to Jackson's argument that the court's finding of probable cause based on the evidence adduced at the preliminary hearing precludes a finding that Jackson committed a Fourth Amendment violation.

A grand jury also found probable cause.  And although plaintiff argues in his response that he has adequately alleged that Jackson intentionally withheld information from the grand jury, in fact, he has made no such allegation.[4]  More pertinently, he has not alleged that the grand jury was not provided with any further information than was provided in the warrant application. Thus, even had there been material omissions by Jackson in the warrant applications, the two additional probable cause determinations foreclose plaintiff's claims of false arrest and imprisonment.

As for the arrest warrant, plaintiff alleges that Jackson omitted the following information from his warrant application: (1) Ms. Hunt was 83 years old; (2) Ms. Hunt, despite claiming that

---

4    The sole allegation to which plaintiff refers as the basis for his position appears in the count of the complaint alleging a conspiracy to deny him access to the courts in violation of his due process rights, and it vaguely states that defendants "took further action to deny him due process by concealing from the courts and prosecutors, at every stage of the proceedings, highly exculpatory information, ensuring that Plaintiff would not have any meaningful access to the courts."

she had been shoved against a door and hit in the face multiple
times, was  not injured and/or had no visible bruising or signs of
injury and did not require and/or refused medical attention/
treatment; (3) there were no signs of a struggle inside the house,
despite Ms. Hunt's claim that she had been violently assaulted in
the home; and (4) Sheriff did not match the description Ms. Hunt
gave officers of her assailant.  None of these omissions tended to
contradict Ms. Hunt's allegations about the attack or her
identification of Sheriff as her attacker, and they did not taint
the probable cause finding for issuance of the arrest warrant.

Plaintiff's principal theory is that the crimes alleged by
Ms. Hunt "only occurred in [her] mind"; that is, she imagined an
attack which never occurred.  He contends in this regard that Ms.
Hunt's age, 83 years, was material information because, as he puts
it, "it is known that all elderly people are more prone to
delusional thinking due to deteriorating mental faculties," such
that "one should be more skeptical when considering an elderly
individual's report of a vicious attack on their person."  In this
vein, he notes that the State ultimately abandoned its prosecution
of him because it "discovered" that Ms. Hunt had dementia.  The
court finds patently meritless plaintiff's contention that a judge
(or other intermediary) would have dismissed Ms. Hunt's report of

15

an assault as the product of delusional thinking solely because of her advanced age.  There is nothing in the complaint or any of the attached exhibits to suggest that at the time of the attack, Ms. Hunt's mental faculties were in any way impaired.  While it was subsequently reported that Ms. Hunt had informed Sheriff's defense counsel that she had dementia and was unable to recall details of the attack, that did not occur until nearly two years after the attack, on the eve of trial, after she was subpoenaed to testify against him.  Indeed, despite Ms. Hunt's advanced age, Ms. Hunt was reportedly able to recall the attack in great detail up to just a month or so before the scheduled trial date.

     To plaintiff's next point, Officer Smith, who was dispatched to Ms. Hunt's residence following the attack, wrote in his incident report that Ms. Hunt "refused" medical attention at the scene and refused to be transported to the hospital; and he stated that she "had no visible bruises."  Plaintiff argues that if Ms. Hunt had been attacked, as she claimed, she would have had observable injuries, especially since she is elderly and it is "common knowledge that elderly people are injured and bruised more easily."  Yet Officer Smith did not state in his report that Ms. Hunt was uninjured or that she did not need medical attention; he stated only that there were no visible bruises and that she

refused medical attention.  Smith's observations do not tend to contradict Ms. Hunt's report of the attack.[5]

Plaintiff also asserts that if Ms. Hunt had been viciously attacked, as she claimed, and had she broken a vase over her assailant's head, as she claimed, there would have been signs of a struggle, including a broken vase, and yet Officer Smith reported that there were "no signs of a struggle inside the house."  This omission was not material.  Smith's report relates that Ms. Hunt, in describing the attack, stated that her assailant forced her onto the kitchen floor, pulled off her shirt and tore her pants and pulled her across the kitchen floor into the hallway.  The attack ended, the report states, when Ms. Hunt was able to "push him off" and run out the door.  In the warrant application, Jackson stated that Ms. Hunt was able to "hit Sheriff with a vase" and escape out the front door.  There is no indication that Ms. Hunt claimed to have broken a vase during the attack.  Beyond that, it does not follow from her description of the attack that there would necessarily or even likely have been signs of a struggle.[6]

---

[5]   This is especially true since it is common knowledge that bruises can (and usually do) take hours or even days to become discernable and often are never visible.

[6]   Although he did not include the information in the warrant application, Jackson testified at the preliminary hearing that, in

17

The court also rejects plaintiff's further assertion that Jackson's failure to disclose that Sheriff, at 5'6" tall and of slight build, did not match Ms. Hunt's description of her attacker as being 6' to 6'2" tall, with a medium build.  Such discrepancies between a victim's or witness's estimation of a suspect's height and weight have been regularly found to be immaterial.  See, e.g., Porter, 751 Fed. Appx. at 430 (omission from warrant affidavit of variations in height, skin tone, and age between the witnesses' descriptions and Porter's actual height, skin tone, and age was not "clearly critical" to probable cause finding in light of multiple positive eyewitness identifications); United States v. Maro, 272 F.3d 817, 822 (7th Cir. 2001) (holding that omission of significant weight disparity did "not come close to the kind of egregious errors necessary to conduct a Franks hearing," let alone establish constitutional violation) (cited in Porter); Wilson v. Russo, 212 F.3d 781, 791-92 (3rd Cir. 2000) (holding that omission of four-to-seven inch height disparity and witness's failure to identify plaintiff in photo lineup were not material when a

---

fact, Ms. Hunt's pants were torn.  Based on the overall condition of the pants, which plaintiff describes as old and worn and showed signs of having been previously mended, plaintiff theorizes that the damage to the clothing did not occur in any attack.  Despite his theory, he does not deny that the pants were torn, a fact which was consistent with Ms. Hunt's report that she was attacked.

credible eyewitness positively identified plaintiff) (cited in
Porter).  In sum, the court concludes that none of the information
that plaintiff contends was intentionally or recklessly omitted
from Jackson's warrant application was critical to or would have
altered the probable cause determination.

Plaintiff argues that the only fact included in the warrant
application capable of establishing probable cause was the photo
array identification by Ms. Hunt.  Citing Malley, however, he
argues that because of Ms. Hunt's advanced age and the absence of
corroborating evidence of an attack, i.e., signs of a struggle and
visible injuries, there was no probable cause to believe that an
attack had even occurred; therefore, it was "reckless and
dangerous" to conduct a photo array identification "with the 83-
year old alleged victim, who was later found to have dementia,"
and no reasonable officer would have believed that her
identification of Sheriff as her assailant provided sufficient
probable cause for his arrest.  He argues further that even if a
reasonably competent officer could have believed that Ms. Hunt was
attacked, as she claimed, there was no probable cause to believe
he was the attacker, both because he did not match Ms. Hunt's
description of her assailant and because there was no evidence
that he was present at the scene of the crime.  Contrary to

plaintiff's insistence, a reasonably competent officer could have believed that Ms. Hunt was, in fact, attacked, as she claimed. Moreover, in his testimony at the preliminary hearing, Jackson explained the basis for conducting the photo array with plaintiff's photo:  Following a strikingly similar attack a week later on a nearby street, Sheriff was identified as having been present on that street the same day wearing clothing that matched the description given by the victim in the second attack. Moreover, according to Jackson's testimony, Ms. Hunt did not hesitate in her identification; she had "no doubt" plaintiff was her assailant.  Based on her unequivocal identification, a reasonably competent officer could have concluded that probable cause existed for issuance of a warrant for plaintiff's arrest.

FOURTH AMENDMENT:  Defendant Davis

"Section 1983 does not create supervisory or *respondeat superior* liability."  Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002).  Rather, "[s]upervisory officials may be held [individually] liable only if: (i) they affirmatively participate in acts that cause [a] constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injury."  Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992) (citing Thompkins v. Belt, 828 F.2d 298,

304 (5th Cir. 1987)); <u>Evett v. Deep E. Tex. Reg'l Narcotics</u>
<u>Trafficking Task Force</u>, 330 F.3d 681, 689 (5th Cir. 2003) (quoting
<u>Thompkins</u>, 828 F.2d at 304) (plaintiff must show "either [that]
the supervisor personally was involved in the constitutional
violation or that there is a 'sufficient causal connection'
between the supervisor's conduct and the constitutional
violation.").  Plaintiff does not allege that Chief Davis was
personally involved in his arrest or detention.  Rather, he
alleges, "on information and belief," that "JPD's training,
supervision, policy and procedures associated with its officers'
use of identification using photo arrays directly led to the
misidentification of Plaintiff and his subsequent pretrial
detainment."  According to the complaint, JPD has an
unconstitutional "practice of including images of suspects in
photo arrays without sufficient probable cause" to believe a crime
was committed or to believe that a particular person committed the
crime, and that this practice is "such a common occurrence that it
is rightly characterized" as an official policy, and Chief Davis,
as JPD's final policymaker with respect to all law enforcement
decisions,[7] is personally liable for this policy and the

---

[7]    The court assumes Chief Davis was the policymaker for JPD in
matters of law enforcement.  <u>See</u> <u>K.B. v. Adams</u>, 480 F. Supp. 3d
746, 755-56 (S.D. Miss.  2020) (concluding that chief of police

consequent violation of plaintiff's constitutional right to be
free from unlawful arrest.  In a related vein, he alleges that
Chief Davis is liable for failing "to train and provide policies
and procedures that would dissuade an officer from presenting a
photo array to an elderly woman, who was clearly confused."  He
also alleges that Chief Davis is liable for failing to train
officers "to submit all pertinent facts when seeking an arrest
warrant."  None of these allegations states a valid basis for
imposing liability on Chief Davis personally.

First, the photo lineup conducted in this case is the only
factual basis supporting plaintiff's allegation of a practice/
policy of conducting photo lineups when officers do not have
probable cause to believe a crime has been committed; and here,
they had probable cause.  Furthermore, it is nonsensical to
suggest that police are limited to including in photo lineups only
persons for whom they already have probable cause.  If that were
the case, lineups could never be conducted and would serve no
purpose.  Thus, a policy that permits officers to include in photo
lineups persons for whom they lack probable cause is not
unconstitutional.  Neither is a putative policy of allowing
officers to present a photo array to an elderly victim or witness

---

was final policymaker for JPD).

for the purpose of identifying the perpetrator of a crime unconstitutional.[8]  Plaintiff's allegation that Chief Davis implemented policies allowing such conduct does not state a claim for violation of plaintiff's constitutional rights.

Further, a failure to train claim requires an underlying constitutional violation.  <u>Ball v. Marion Cnty</u>., Civil Action No. 2:20-cv-1-KS-MTP, 2020 WL 9107787, at *2 (S.D. Miss. 2020) (citing <u>Corring v. Pearl River Cty.</u>, 550 F. App'x 204, 205 (5th Cir. 2013); <u>Saenz v. Heldenfels Bros.</u>, 183 F.3d 389, 392-93 (5th Cir. 1999)).  The court has determined that plaintiff's allegations do not state a claim against Jackson for violation of plaintiff's Fourth Amendment rights by failing to disclose material information.  It follows that Chief Davis cannot be liable based on an allegation that he failed to train officers to disclose all material information in seeking an arrest warrant.

<u>FOURTEENTH AMENDMENT-DUE PROCESS/ACCESS TO COURTS:  Davis</u>

Plaintiff purports to assert a cause of action for denial of access to courts, although the basis for the claim is not clear,

---

8    The court's view might be different if the allegation were that officers were allowed and encouraged to seek warrants based solely on the identification of suspects from photo lineups by individual known by the officers to have dementia.  Here, though, plaintiff alleges only that the victim who made the identification was elderly; and his further characterization of her as "confused" derives only from the fact that she was elderly.

and it is also unclear against whom he is attempting to advance this claim.  He alleges that although he maintained his innocence throughout his incarceration, "JPD's policies and procedures regarding the production of discovery ensured that the evidence that would lead to [his] release [was] not turned over in a timely fashion," and that JPD, pursuant to its common practice/policy of "withholding police reports, investigative reports, lab reports, photographic evidence from Plaintiff's defense counsel, the DA's Office or both, JPD deprived [plaintiff] of meaningful access to the courts."  While the complaint refers to a denial of access to courts, the substance of plaintiff's allegations suggests that he is, instead, attempting to assert a due process claim.  In either case, he has no cognizable claim.

In Baker v. McCollum, 443 U.S. 137, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979), the Supreme Court concluded that the pretrial detention of the plaintiff for three days based on a facially valid arrest warrant and in the face of the plaintiff's protestations of innocence did not amount to a deprivation of liberty without due process.  Id. at 143-45, 99 S. Ct. 2689.  The Court made clear that the constitution does not require a law enforcement officer executing an arrest warrant to investigate independently every claim of innocence, and that ultimately, the

24

"determination of such claims of innocence is placed in the hands of the judge and the jury."  Id. at 145-46, 99 S. Ct. 2689.  As is pertinent to the claim it appears plaintiff herein is attempting to assert, the Court wrote:

> Obviously, one in respondent's position could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment.  For the Constitution likewise guarantees an accused the right to a speedy trial, and invocation of the speedy trial right need not await indictment or other formal charge; arrest pursuant to probable cause is itself sufficient.  United States v. Marion, 404 U.S. 307, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971).  We may even assume, arguendo, that, depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of "liberty . . . without due process of law."  But we are quite certain that a detention of three days over a New Year's weekend does not and could not amount to such a deprivation.

Id. at 144-45, 99 S. Ct. 2689.[9]

---

[9]     The Baker Court went on to state:
The Constitution does not guarantee that only the guilty will be arrested.  If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released.  Nor are the manifold procedural protections afforded criminal defendants under the Bill of Rights "without limits."  Patterson v. New York, 432 U.S. 197, 208, 97 S. Ct. 2319, 2326, 53 L. Ed. 2d 281 (1977).  "Due process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person."  Ibid.
Baker v. McCollan, 443 U.S. 137, 99 S. Ct. 2689, 61 L. Ed. 2d 433

The Fifth Circuit has held that while law enforcement officers are not necessarily required to investigate all claims of innocence, they cannot ignore or conceal exculpatory evidence. For example, in <u>Sanders v. English</u>, 950 F.2d 1152 (5th Cir. 1992), although the plaintiff was arrested pursuant to a valid warrant, he alleged that he was illegally detained because the defendant officer failed to release him even after the officer knew (or should have known) that the plaintiff had been misidentified.  <u>Id.</u> at 1162.  The court determined that summary judgment was not proper because there was evidence showing that the officer had "deliberately looked the other way in the face of exonerative evidence indicating that he had arrested the wrong man: three alibi witnesses deemed credible by [the officer], a negative identification by one of the witnesses who helped compose the police sketch, and a belated identification by the victim under peculiar circumstances."  <u>Id.</u>  The Fifth Circuit reasoned that while the officer may not have been able to "terminate[] the proceedings unilaterally once the wheels of the criminal justice system were already in motion[,] ... a jury could find that if [the officer] had disclosed the exculpatory evidence to the

_____

(1979).

26

prosecuting attorney's office, Sanders would have been released and the charges against him dropped long before they were." Id. See also Geter v. Fortenberry, 849 F.2d 1550, 1559 (5th Cir. 1988) (recognizing that a police officer who deliberately conceals exculpatory evidence violates clearly established constitutional principles).[10]

In the present case, plaintiff does not allege that officers discovered exculpatory information following his arrest that would have exonerated him and that, if disclosed to the prosecutor (or courts), would have led to his release from jail without a trial. He only vaguely alleges that JPD had a policy of withholding "police reports, investigative reports, lab reports [and] photographic evidence" without identifying anything in these materials that was exonerative, other than what he alleges Jackson

---

[10]   Under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and its progeny, prosecutors and police officers are forbidden by due process protections to suppress "evidence favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S. Ct. 1194.  However, a Brady violation occurs when a nondisclosure has deprived a defendant of a fair trial and thus becomes a concern for courts only after there has been a trial.  See Phillips v. Whittington, 497 F. Supp. 3d 122, 159 (W.D. La. 2020) (citing United States v. Garrett, 238 F.3d 293, 303 (5th Cir. 2000) (Fish, J., concurring)).  Here, there was no trial.

withheld in seeking the arrest warrant.[11]  Ultimately, plaintiff

was released from jail not because any previously undisclosed

exculpatory evidence came to light but because the alleged victim

reported she had dementia and could not remember the attack, or

details of the attack.  Thus, plaintiff has not alleged a viable

due process claim on this basis.  Further, plaintiff does not

suggest how any alleged failure to disclose any exculpatory

evidence deprived him of meaningful access to the courts.

CONSPIRACY

Plaintiff alleges that defendants "agreed" to ensure that

plaintiff was arrested and detained and

> took actions in furtherance of their agreement . . . by
> placing Plaintiff in a photo array with insufficient
> probable cause in [a] case where there was every reason
> to believe that no crime had taken place, misleading the
> courts by applying for an arrest warrant but leaving out
> critical facts and circumstances indicating a lack of
> probable cause that any crime had been committed and
> omitting that Plaintiff did not match the height and
> build description given by the alleged victim, [and by
> thereafter] concealing from the courts and prosecutors .
> . . highly exculpatory information, ensuring that

---

11   Plaintiff alleges that the results of forensic testing by the
Mississippi Crime Lab of the dried blood on Ms. Hunt's clothing
was "potentially exculpatory and Plaintiff eagerly awaited the
results that would clear his name," but "[t]he crime lab never
submitted a lab report and to this day the results of that testing
are unknown to Plaintiff."  He also alleges that "[i]t is also
evident from the police reports and preliminary hearing transcript
that latent fingerprints were gathered at one or both of the crime
scenes" but "[t]he State has never produced a crime lab report of
any kind."

Plaintiff would not have any meaningful access to the courts.

Further, as part of his conspiracy cause of action, he alleges, "upon information and belief that concerns regarding Plaintiff's innocence and the likelihood that no crime had been committed were conveyed to superiors within JPD and that these superiors/final decision makers forbade any further investigation, conspiring instead to close the case."  The latter allegation does not state a valid conspiracy claim, or a substantive claim, for a number of reasons, including that plaintiff does not allege an agreement to prohibit investigation of the alleged crime; plaintiff had no constitutional right to further investigation, regardless of any concerns some unidentified officers may have had regarding plaintiff's guilt (including suspicion or belief that no crime had occurred), see Baker, 443 U.S. at 145-46, 99 S. Ct. 2689; and plaintiff has not identified any defendant who was a "superior within JPD" that refused to allow further investigation.

Plaintiff's further conspiracy allegations also fail to state a claim.  To state a claim for conspiracy under § 1983, a plaintiff must allege the existence of (1) an agreement to do an illegal act; and (2) an actual constitutional deprivation.  Cinel v. Cannock, 15 F.3d 1338, 1343 (5th Cir. 1994).  There can be no conspiracy claim without an underlying violation of plaintiff's

constitutional rights.  Buehler v. Dear, 27 F.4th 969, 989 (5th
Cir. 2022) (citing Hale v. Townley, 45 F.3d 914, 920 (5th Cir.
1995) (quoting Pfannstiel v. City of Marion, 918 F.2d 1178, 1187
(5th Cir. 1990) ("[A] conspiracy claim is not actionable without
an actual violation of section 1983.")).  See also Hill v. City of
Seven Points, 31 Fed. Appx. 835, 2002 WL 243261, at *8 (5th Cir.
2002) (holding that "[d]efendants are entitled to qualified
immunity from the § 1983 conspiracy claim if they are entitled to
qualified immunity from the underlying § 1983 claims.").
Plaintiff has failed to adequately allege an underlying violation
of his constitutional rights and thus has failed to allege a
viable conspiracy claim.

        MUNICIPAL LIABILITY – Section 1983

    Although defendants have moved for dismissal of plaintiff's
claims against them in their individual capacities, it is clear
from the foregoing that there is likewise no basis for municipal
liability.  To succeed in a § 1983 lawsuit against a municipality,
a plaintiff must show that he suffered a constitutional injury as
the result of official policy, custom, or the act of an official
policymaker.  Monell v. Dep't of Social Servs., 436 U.S. 658, 690-
91 (1978).  "Municipal liability will not attach if the
complaining party has suffered no constitutional injury at the

hands of a municipal employee." Lock v. Torres, 694 Fed. App'x.
960 (5th Cir. 2017) (citing City of Los Angeles v. Heller, 475
U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986)) (holding
that county was not liable for false arrest under § 1983 where
independent- intermediary doctrine barred claims against
individual officers such that there was no constitutional
violation arising from the officer's actions).  Here, plaintiff
has not adequately alleged either that he suffered a violation of
a constitutional right or that an official policy caused the
violation of a constitutional right.  Accordingly, his § 1983
claims against the City defendants in their individual and
official capacities, and his claims against the City will be
dismissed.

MALICIOUS PROSECUTION

In addition to his federal claims under § 1983, plaintiff has
asserted a state law malicious prosecution claim.  Defendants
argue that plaintiff cannot establish a state law malicious
prosecution claim because plaintiff failed to comply with the
notice requirements of the Mississippi Tort Claims Act, Miss. Code
Ann. § 11-41-1 et seq.; they are immune from such suit; and the
statute of limitations has run.  Each of these arguments has
merit; and plaintiff has not contended otherwise.  His response,

31

in fact, does not address defendants' arguments for dismissal of this claim.  The claim will therefore be dismissed.

CONCLUSION

Based on the foregoing, it is ordered that the motions of the various City defendants are granted and the claims against them in their individual capacities are dismissed with prejudice.  It is further ordered that the official capacity claims against these defendants and the claims against the City of Jackson are dismissed with prejudice.

SO ORDERED this 6th day of September, 2023.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

32